WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shae Y Zalomski,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-00417-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Shae Y. Zalomski's Application for Disability Insurance Benefits. Plaintiff filed a Complaint (Doc. 1) with this Court seeking review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 22, Pl. Br.), and Defendant Social Security Administration Commissioner's Answering Brief (Doc. 23, Def. Br.). Plaintiff did not file a reply. The Court has reviewed the briefs and the Administrative Record (Doc. 15, R.). For the following reasons, the Administrative Law Judge's decision ("ALJ") is affirmed.

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance Benefits on August 11, 2017 for a period of disability beginning on September 8, 2016. (R. at 288–90.) Her claim was initially denied on January 9, 2018, and again upon reconsideration on June 22, 2018. (R. at 43.) Plaintiff appeared before the ALJ for a hearing regarding her claim on June 3, 2020, which the ALJ denied on June 30, 2020. (R. at 52, 106.) On January 12, 2021, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as

the agency's final decision. (R. at 1–3.)

The ALJ reviewed the entire record, including Plaintiff's medical records, Plaintiff's own testimony, and the testimony of a vocational expert. (R. 43–45.) Upon considering the medical records and opinions, the ALJ evaluated the Plaintiff's disability based on the following severe impairments: spine disorder, fibromyalgia, vertigo, headaches, and a history of tear of the labrum of the right hip. (R. at 45.)

At step three of the five-step sequential analysis, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 30.) The ALJ then calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] perform sedentary work, as defined in 20 CFR 404.1567(a), except she can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. She can occasionally balance on uneven surfaces, stoop, kneel, and crouch. She cannot crawl. She cannot work around unprotected heights or hazardous unshielded moving machinery. She can tolerate a moderate noise level. She would need a cane when moving about the workplace.

(R. at 46.) Based on the evidence, the ALJ found, at step five, that Plaintiff "is capable of performing past relevant work as a Triage/Schedule Coordinator (DOT 205.162-010) and an Appointment Clerk (DOT 237.367-010)," which does not require any work-related activities precluded by her RFC. (R. at 49.) The ALJ therefore concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the decision. (R. at 50–51.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, a district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error.

*Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, a court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The reviewing court should "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Even when the ALJ commits legal error, the reviewing court must uphold the decision where the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* If so, the ALJ continues to step three. There, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not,

the ALJ proceeds to step four, where she assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step. There, she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the claimant can perform such work, she is not disabled. *Id*. If she cannot, she is disabled. *Id.*

### III.     DISCUSSION

Plaintiff alleges that the ALJ erred in her consideration of (1) the medical opinion testimony and her residual functional capacity, and (2) her symptom testimony. (Pl. Br. at 2.)

####     A.     Medical Opinions

Plaintiff first challenges the ALJ's finding that the opinions of treating pain specialist Dr. Cerre were not persuasive. (Pl. Br. 23.) Specifically, the ALJ decided Dr. Cerre's opinions were "not supported by the medical records." (R. at 47.)

The parties agree, and the Court finds, that the amended regulations for evaluating medical evidence apply to this case. (Pl. Br. 22, Def. Br. 11–13.) *See* Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). The new regulations apply to claims filed on or after March 27, 2017. *Id.* Here, Plaintiff filed her application after the effective date. (R. at 288–90.)

The 2017 regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a).  Other factors, which an ALJ "may, but [is] not required to [] explain" when evaluating the persuasiveness of a medical opinion, are the medical source's "relationship with the claimant," "specialization," "familiarity with the other evidence in the claim," and "understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(b)(2),

(c).

In *Woods*, the Ninth Circuit held that the revised regulations "are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Likewise, the Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Id.* Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted) (alteration in original).

Under this new scheme, the most important factors that the ALJ considers are "supportability" and "consistency." 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *Woods*, 32 F.4th at 792.

Dr. Cerre opined that "the claimant should not do bending, lifting, or sitting more than 10 to 15 minutes" and "the claimant can never lift less than 10 pounds, and can sit, stand, and walk for less than two hours in an eight-hour workday, among other limitations." (R. at 49.) The ALJ found these opinions to be unpersuasive because they were "not supported by the medical records, and . . . not consistent with the record as a whole,

including the claimant's activities of daily living. Dr. Cerre's own records note that the claimant stays active." (*Id.*) Plaintiff characterizes this determination as "one-sentence" and "impossible for a reviewing Court or Plaintiff to ascertain." (Pl. Br. 24.) But in fact, the ALJ's conclusion adequately addresses the "supportability and consistency" factors as explained in *Woods*. 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b), (b)(2)). The ALJ compared Dr. Cerre's opinions (Plaintiff can sit for 30 minutes and stand for 5 to 10 minutes because she "monit[o]rs time" (R. at 832)); with Dr. Cerre's own treatment notes (though Plaintiff's "driving is limited," she drove herself to her appointment; she "feels fatigued" but "does stay active" (R. at 839–40)); and the claimant's activities of daily living (Plaintiff can do laundry, wash dishes, dust, grocery shop, drive, and prepare meals (R. at 370–72)). Dr. Cerre's finding that Plaintiff can only stand for 5 to 10 minutes cuts directly against his note that she "stay[s] active" or even grocery shops and prepares meals. (R. at 839–40, 370–72.) Far from "impossible . . . to ascertain," these apaprent inconsistencies adequately support the ALJ's treatment of Dr. Cerre's opinion.

Plaintiff also asserts that the ALJ "failed to compare the consistency of the longitudinal treatment record with the reports from [Dr. Cerre]." (Pl. Br. at 25.) But the ALJ did not err in finding Dr. Cerre's opinions were inconsistent with the medical record as a whole. The ALJ first discussed her 2017 medical records which showed: (1) Plaintiff's gait was steady and upright though "slight[ly]" antalgic (R. at 446); (2) she had a score of 5 out of 5 in the range of motion in her left upper extremity, and 4 out of 5 on her right (R. at 447); (3) surgery resolved the claimant's right radiculopathy (R. at 446–47); and her brain MRI was unremarkable (R. at 522). These records contradict Dr. Cerre's assigned severe functional limitations in every respect, specifically that Plaintiff can reach with her arms 0 percent of the time during an eight-hour working day and can only sit for 30 minutes. (*See* R. at 49, 832.) Next, the ALJ discussed Plaintiff's 2019 records, which showed: (1) the claimant did not want to change medication for her headaches, as she was managing them with medication (R. at 794); and (2) though her main concern was dizziness, testing did not show any signs of vertigo (*id.*). Likewise, these records contradict

Dr. Cerre's opinion, also from 2019, that that Plaintiff must take a break to walk every 10 to 15 minutes for 10 minutes, but she is "a fall risk – vertigo." (R. at 833.) These inconsistencies support the ALJ's decision as to Dr. Cerre's opinion.

Plaintiff finally asserts that the "ALJ failed to explain how [Plaintiff's] activities of daily living conflict with the limitations described by Dr. Cerre." (Pl. Br. 26.) The ALJ listed Plaintiff's daily activities as preparing meals, doing laundry, washing dishes, dusting, driving, shopping for groceries, and "remain[ing] active." (R. at 48.) Plaintiff does not object to the ALJ's listing of her daily activities (*see* Pl. Br. 26–27), but rather argues that the ALJ erred in his explanation of how Plaintiff's daily activities conflict with Dr. Cerre's limitations. (Pl. Br. 26–27.) While it is true that a claimant is not required to be completely incapacitated to be found disabled, it is also true that an ALJ may consider the Plaintiff's daily activities to determine whether they are "inconsistent with the alleged symptoms." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). As such, the Court finds no error in the ALJ's comparison of Plaintiff's daily activities with her alleged symptoms.

Relatedly, Plaintiff contends that the ALJ "failed to identify any *specific* medical facts or even persuasive non-medical evidence that indicates [Plaintiff] can perform sedentary work." (Pl. Br. 28.) To the contrary, the ALJ discussed years of Plaintiff's medical history, her physicians' opinions, and testimony. (R. at 46–49.) The ALJ limited Plaintiff to sedentary work with a cane, no exposure to heights, and limited exposure to noise. (R. 47–48.) The Court finds that these limitations are adequately supported by the medical record showing Plaintiff's alleged dizziness and headaches. Moreover, "[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Accordingly, the ALJ did not err.

### B. Symptom Testimony

Plaintiff also challenges the ALJ's treatment of her symptom testimony. (Pl. Br. at 29–31.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding

pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ determines whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If so, the ALJ must then evaluate the claimant's testimony in the context of the objective medical evidence and other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(2)–(3). To prevent the ALJ from "arbitrarily discredit[ing]" the claimant's subjective testimony, *see Pennock v. Comm'r*, 19-CV-08191-PCT-MTL, 2020 WL 6796768, at *6 (D. Ariz. Nov. 19, 2020) (quoting *Thomas*, 278 F.3d at 958), the Ninth Circuit has held that the ALJ may only discredit a claimant's allegations for reasons that are "specific, clear and convincing." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). This is an exacting standard, under which the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

In doing so, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ may consider, for instance, "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Indeed, "[e]ven where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or suggest that the claimant's "later claims about the severity of [the] limitations were exaggerated." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). In addition, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see also* 20 C.F.R. § 404.1529(c)(3). While the ALJ may consider that the medical record lacks evidence to support certain symptom testimony, that cannot form the sole basis for discounting the

testimony. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the Court finds that the ALJ did not commit reversible error in discrediting Plaintiff's symptom testimony. Under the first prong, the ALJ found that the medical evidence reflected spine disorder (history of cervical discectomy fusion, cervical disc herniation, multilevel degenerative disc disease), fibromyalgia, vertigo, headaches, and history of tear of the labrum of right hip (R. at 45), and determined that these "impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms" (R. at 47). Under the second prong, however, the ALJ carefully considered the evidence (R. at 45–50) and determined that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. at 47).

First, the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms [] are not fully consistent with the record." (R. at 48.) Plaintiff "allege[d] symptoms including neck pain, back and hip pain, and ongoing dizziness and migraines," and "blurry and double vision." (R. at 47, *see also* R. 122–24.) The ALJ highlighted that though she reported "having episodes of dizziness since her accident," "numbness and tingling down her left arm," and "pain as a five," she had a "steady and upright" gait and station, her "MRI was unremarkable," and she had "5/5 range of motion in her upper left extremity." (R. at 47.) Moreover, the ALJ noted that several of Plaintiff's symptoms were treated with surgery or medicine: her "right radiculopathy resolved after surgery," and her migraine medication was working. (R. at 47–48.) Moreover, Plaintiff's activities of daily living also undermined her symptom allegations. Plaintiff "is able to do laundry, wash dishes, and dust . . . [She] continues to drive and grocery shop." (R. at 48.) Based on these and other discrepancies between Plaintiff's reported symptoms and the record, it was reasonable for the ALJ to conclude that the evidence simply was "not consistent with one who suffers such severe limitations as to preclude all work activity." (R. at 43.) *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[When] a claimant is able to spend a substantial part of his day engaged in

pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain."). Accordingly, the ALJ's reasons for discrediting Plaintiff's symptom testimony were clear and convincing and supported by substantial evidence.

## IV. CONCLUSION

For the forgoing reasons,

**IT IS ORDERED** affirming the June 30, 2020 decision of the Administrative Law Judge (R. at 43–51), as upheld by the Appeals Council on January 12, 2021 (R. at 1–4).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 19th day of July, 2022.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge